IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **HENRY E. LYONS,** | |
| **Plaintiff,** | |
| v. | Case No. 4:13-cv-00897-BP |
| **F. WAYNE VAUGHT, et al.** | |
| **Defendants.** | |

## SECOND AMENDED COMPLAINT

COMES NOW, Henry E. Lyons ("Lyons"), by and through his attorneys of record, and for his Second Amended Complaint against Defendant F. Wayne Vaught ("Vaught") and Defendant Reginald L. Bassa ("Bassa"), in their personal capacities, (hereinafter collectively referred to as "Defendants"), respectfully states as follows:

## INTRODUCTION

1. "[A] state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983); *see also Pickering v. Board of Educ.*, 391 U.S. 563, 568-74 (1968).

2. This is a civil action under 42 U.S.C. § 1983 seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of retaliating against Lyons for his exercise of constitutionally protected speech.

3. Lyons brings this action resulting from damages incurred due to his unlawful termination from his position as a part-time lecturer for UMKC in violation of his federal constitutional rights to free speech.

4. Defendants retaliated against Lyons, a public employee, for speaking out on a matter of public concern, namely, his concern that student athletes at UMKC were receiving preferential academic treatment.

**PARTIES**

5. Lyons is a citizen of the United States, presently residing in Johnson County, Kansas.

6. At all times relevant to this action, Lyons was employed by the University of Missouri at Kansas City ("UMKC").

7. At all times relevant to this action, UMKC maintained and operated a campus at 5100 Rockhill Road, Kansas City, Missouri 64110.

8. Vaught is the Dean of the College of Arts & Sciences at UMKC, and has a primary place of residence at 9830 Briar Street, Overland Park, Kansas 66207. Vaught is being sued in his personal capacity.

9. Bassa is the Director of UMKC's Program for Adult College Education ("PACE"), and has a primary place of residence at 4470 Rockhill Terrace, Kansas City, Missouri 64110. Bassa is being sued in his personal capacity.

**JURISDICTION AND VENUE**

10. Jurisdiction in this Court is proper against Defendants pursuant to 28 U.S.C. §§ 1331 and 1343 because the acts complained of involve violations of Lyons' federally protected civil rights.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claim occurred in this judicial district.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

12. Paragraphs 1 through 11 above are incorporated herein by reference.

13. Lyons began his employment with UMKC as a part-time lecturer in the fall of 2008.

14. From the fall of 2008 through the fall of 2010, Lyons was continuously offered an appointment in the Department of Continuing Education/Program for Adult College Education ("PACE") as a part-time lecturer each semester.

15. Each semester, Lyons had been offered an appointment by the recommendation and approval of the Director/Department Chair of the PACE Program and the Dean of the College of Arts & Sciences.

16. Lyons taught a self-developed class entitled "Career and Life Development," which educated students on how to be a "winner" and succeed on both a professional level and in life in general.

17. Lyons' course was offered through UMKC's College of Arts & Sciences, and was formally referenced in UMKC's course catalog as "A&S 170."

18. Lyons' cause of action against Defendants stems from the preferential academic treatment afforded student athletes on UMKC's campus, one of which challenged a grade received in one of Lyons' classes (hereinafter "Student Athlete").

19. In the fall 2010 semester, the Student Athlete received an "F" in the A&S 170 course taught by Lyons.

20. In January 2011, the Student Athlete challenged the grade received in Lyons' class through the school's appeal process.

21. Ultimately, as a result of the appeal process, the Student Athlete's final grade in Lyons' class was changed from an "F" to a "D+", a passing grade.

22. In late November 2011, Lyons met with Mr. Leo E. Morton, the Chancellor of UMKC, to express his concerns about widespread preferential academic treatment afforded to student athletes on the UMKC campus.

23. Lyons asked two community leaders to join him at this meeting: (1) one was the past Chairman of the Minority & Cultural Affairs Committee, the past President of UMKC's Bloch Alumni Association Board, and past Vice President of UMKC's Alumni Association Board; and (2) one was the current President of the Kansas City, Missouri unit of the NAACP, and a national Board Member of the NAACP.

24. Also present at this meeting was Ms. Karen L. Dace, the former Deputy Chancellor for Diversity, Access and Equity at UMKC.

25. During this meeting, Lyons expressed his concern to Chancellor Morton, the two community leaders, and Ms. Dace, that student athletes on UMKC's campus were receiving preferential academic treatment.

26. Lyons argued that it wasn't right that student athletes were given preferential academic treatment, and inquired why a student's status as a student athlete should play any role in the academic process.

27. Lyons said it was unfair to all other students at UMKC, to let student athletes take advantage of the grading system.

28. Moreover, based on his conversations with other professors, Lyons believed it was a growing and widespread problem on the UMKC campus.

29. Lyons said UMKC's actions, or lack of action, could lead to adverse publicity and sanctions, like those suffered by other NCAA institutions that provided improper benefits or preferential academic treatment to student athletes.

30. Finally, Lyons requested that Chancellor Morton undertake a comprehensive investigation into the preferential academic treatment afforded to student athletes on campus.

31. Chancellor Morton responded that he did not desire to "get involved" in student/faculty matters on campus, or issues involving academic integrity.

32. Chancellor Morton stated that his job was simply to "raise money" for the University and to project a positive image for UMKC.

33. While Chancellor Morton acknowledged the potential for adverse publicity on UMKC for any preferential academic treatment afforded student athletes, he said any such news would be temporary, and would soon be forgotten after a couple of days.

34. In sum, Chancellor Morton said he was not prepared to investigate or take any other actions with respect to Mr. Lyons' concerns.

35. After meeting with Morton, Lyons also spoke with Bassa and Vaught, and told them about his meeting with Chancellor Morton, the two community leaders, and Ms. Dace.

36. Lyons also told Bassa and Vaught what he had discussed with Chancellor Morton, the two community leaders, and Ms. Dace, namely:

    a. that student athletes on UMKC's campus were receiving preferential academic treatment;

    b. that it wasn't right that student athletes were given preferential academic treatment;

    c. that it was unfair to all other students at UMKC to let student athletes take advantage of the grading system;

    d. that based on his conversations with other professors, it was a growing and widespread problem on the UMKC campus;

e. that UMKC's actions, or lack of action, could lead to adverse publicity and sanctions, like those suffered by other NCAA institutions that provided improper benefits or preferential academic treatment to student athletes.

37. Lyons also told Bassa and Vaught that he asked Chancellor Morton to undertake a comprehensive investigation into the preferential academic treatment afforded to student athletes on campus.

38. Both Bassa and Vaught said they would contact Chancellor Morton to discuss the situation moving forward.

39. Lyons heard nothing further from Chancellor Morton, Bassa, or Vaught with respect to his concerns.

40. However, Lyons was not offered a part-time lecturer employment contract for the following semester.

41. Despite having taught seven (7) consecutive A&S 170 courses, Lyons' course, A&S 170, was removed from the University's course catalog for the Spring 2012 semester.

42. UMKC's 2010-2011 Course Catalog stated as follows:

Professional staff can assist students in career exploration and effective career decision-making. The Career Services Center offers ED 160, Career and Life Planning, in the fall and spring semesters for two credit hours. ***A&S 170 (PACE) Career and Life Development is offered <u>every</u> spring semester for three credits.***

43. Lyons received no advanced notice or any communication from UMKC or Defendants notifying him of the decision to eliminate his course, or the reasons behind such a decision.

## COUNT I

**Violation of 42 U.S.C. § 1983 – First Amendment Retaliation**

**(Against All Defendants)**

44. Paragraphs 1 through 43 above are incorporated herein by reference.

45. During his meeting with Chancellor Morton, the two community leaders, and Ms. Dace, Lyons' engaged in protected speech when he complained about widespread preferential academic treatment afforded to student athletes on the UMKC campus.

46. Lyons' speech was protected activity under the First Amendment.

47. Lyons' speech addressed a matter of public concern.

48. Lyons' speech was made as a concerned public citizen, rather than as an employee upon matters only of personal interest.

49. Lyons' interest in commenting on such matters of public concern outweighed the University's interest in rendering efficient services to its constituents.

50. Lyons' speech was a substantial or motivating factor in Defendants' decision to terminate or otherwise impair Lyons' continued employment with the University as an adjunct professor/part-time lecturer.

51. Part-time lecturer contracts in UMKC's PACE Program are offered based on the recommendation and approval of Bassa, the Director/Department Chair of UMKC's PACE Program, and Vaught, the Dean of the College of Arts & Sciences.

52. Because of Lyons' speech, Bassa did not offer, recommend, or approve Lyons for an appointment in UMKC's Pace Program as a lecturer for the Spring 2012 semester.

53. Because of Lyons' speech, Vaught did not offer, recommend, or approve Lyons for an appointment in UMKC's Pace Program as a lecturer for the Spring 2012 semester.

54. After seven (7) consecutive semesters of teaching his A&S 170 course, Defendants discharged Lyons from his employment as a part-time lecturer for UMKC.

55. At all relevant times, Defendants were acting under color of law in the performance of their official duties.

56. Defendants participated in, approved, and/or implemented a decision which caused the alleged constitutional injuries.

57. Defendants violated a federal constitutional right belonging to Lyons that was clearly established at the time of the violation, such that reasonable individuals in the position of Bassa and Vaught would have known that they were violating that right.

58. Questions concerning widespread academic dishonesty, fraud, or preferential academic treatment with respect to student athletes at a public university, are of apparent interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal.

59. As a direct and proximate result of Defendants' actions and/or inactions, Lyons has been deprived of income, as well as other monetary and non-monetary benefits.

60. As a direct and proximate result of Defendants' actions and/or inactions, Lyons has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish, and related compensatory damages.

61. Defendants' conduct was willful, wanton, and malicious, and showed reckless indifference to or conscious disregard for the rights of Lyons, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them from engaging in such misconduct in the future.

62. Lyons is entitled to recover from Defendants reasonable attorneys' fees and costs.

WHEREFORE, Lyons requests that the Court enter judgment in his favor and against Defendants for such damages, actual, nominal and punitive, as are fair and reasonable, for his

reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Lyons hereby requests a trial by jury on all issues so triable.

Dated: September 8, 2015

Respectfully submitted,

McCLELLAND LAW FIRM
*A Professional Corporation*

By: **s/Ryan L. McClelland**
Kelly L. McClelland, MO Bar #27156
Kenneth E. Cox, MO Bar #51861
Jerome M. Patience, MO Bar #51965
Ryan L. McClelland, MO Bar #59343
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
kmcclelland@mcclellandlawfirm.com
kcox@mcclellandlawfirm.com
jpatience@mcclellandlawfirm.com
ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Michael L. Blumenthal, Esq.
Deena B. Jenab, Esq.
Seyferth Blumenthal & Harris LLC
4801 Main Street, Suite 310
Kansas City, Missouri 64112
mike@sbhlaw.com
deena@sbhlaw.com

By: **s/Ryan L. McClelland**

**ATTORNEYS FOR PLAINTIFF**